Citation Nr: 1722242 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 11-30 861 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent for loss of bladder control for the period prior to August 21, 2009, in excess of 40 percent for the period from August 21, 2009 to January 10, 2016, and in excess of 60 percent from January 10, 2016. 

2. Entitlement to a rating in excess of 40 percent for degenerative disc disease (DDD) of the lumbar spine for the period prior to February 28, 2011, and in excess of 20 percent therefrom. 

3. Entitlement to a rating in excess of 30 percent for DDD of the cervical spine for the period prior to January 19, 2017, and in excess of 20 percent therefrom. 

4. Entitlement to an initial rating in excess of 30 percent for peripheral neuropathy (PN) of the left upper extremity (LUE), to include the shoulder, arm, hand, and fingers. 

5. Entitlement to an initial rating in excess of 20 percent for PN of the left lower extremity (LLE), to include the hip, buttocks, and foot, prior to January 19, 2017, and in excess of 40 percent therefrom. 

6. Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance of another person or at the housebound rate. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T. Hal Smith, Counsel


INTRODUCTION

The Veteran served on active duty from February 1971 to June 1974. 

These matters are before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the St. Petersburg, Florida, Regional Office (RO) of the Department of Veterans Affairs (VA). A Travel Board hearing was held in April 2015 before the undersigned Veterans Law Judge (VLJ). A written transcript of the hearing has been prepared and incorporated into the evidence of record. 

The long and complex procedural history as to the claims on appeal has been summarized in previous Board decisions and will not be repeated here. It is important to note, however, that the claims for increased ratings for loss of bladder control were remanded in November 2016 for additional development. Subsequently, as noted in a February 2017 rating decision, the RO increased the disability rating to 40 percent, effective August 21, 2009, and to 60 percent, effective January 11, 2016. The appeal continues. 

Moreover, the additional claims on appeal (or their previous classifications) were remanded by the Board in a January 2016 decision. Subsequently, as noted in a March 2017 supplemental statement of the case (SSOC) and/or a March 2017 rating decision, the ratings in effect were confirmed and continued except that the evaluation of PN of the LLE was increased from 20 percent to 40 percent, effective January 19, 2017, and the 30 percent rating in effect for DDD of the cervical spine, which was decreased to 20 percent, effective January 19, 2017. These changes have been reflected on the title page of this decision, and these issues also remain on appeal. 

With respect to the Veteran's representative, of record is a 2007 VA Form 21-22 (Appointment of Veterans Service Organization as Claimant's Representative) in favor of the Disabled American Veterans (DAV). A VA Form 21-22a (Appointment of Individual as Claimant's Representative) was received in March 2017. This form listed no individual, though it identified the individual as a representative of AAA PTSF Association. There is no such A-recognized service organization. This form is not considered a valid appointment of a representative. Subsequently dated notification letters from VA have been sent to the Veteran and to DAV regarding the Veteran's claims. (See, for example, the May 17, 2017, letter noting that the Veteran's claims were being returned to the Board for further appellate consideration.) Thus, DAV has continued to be recognized as the representative of the Veteran in his claims. His representation by DAV was not revoked by the invalid March 2017 VA Form 21-22. 

The following issues are addressed in the REMAND portion of the decision below: 
entitlement to a rating in excess of 40 percent DDD of the lumbar spine for the period prior to February 28, 2011, and in excess of 20 percent therefrom; entitlement to a rating in excess of 30 percent for DDD of the cervical spine for the period prior to January 19, 2017, and in excess of 20 percent therefrom; entitlement to an initial rating in excess of 30 percent for PN of the LUE, to include the shoulder, arm, hand, and fingers; entitlement to an initial rating in excess of 20 percent for PN of the LLE, to include the hip, buttocks, and foot, prior to January 19, 2017, and in excess of 40 percent therefrom; and entitlement to SMC based on the need for regular aid and attendance of another person or at the housebound rate. These claims are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if additional information is required on his part.


FINDINGS OF FACT

1. For the period prior to August 21, 2009, residuals of loss of bladder control included urinary urgency and frequency of voiding 3 times per night with daytime voiding interval of every 2-3 hours. 

2. For the period from August 21, 2009, to January 10, 2016, residuals of loss of bladder control included urinary urgency and frequency of voiding 5 times per night with daytime voiding interval of every hour or so. 

3. For the period from January 11, 2016, residuals of loss of bladder control included the wearing of absorbent materials which the Veteran said had to be changed 5 or more times per day. 


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 20 percent for loss of bladder control for the period prior to August 21, 2009, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.21, 4.115a, 4.115b, Diagnostic Code (DC) 7542 (2016). 

2. The criteria for an initial disability rating in excess of 40 percent for loss of bladder control for the period from August 21, 2009, to January 10, 2016, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.21, 4.115a, 4.115b, DC 7542 (2016). 

3. The criteria for an initial disability rating in excess of 60 percent for loss of bladder control for the period from January 11, 2016, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2015); 38 C.F.R. §§ 4.21, 4.115a, 4.115b, DC 7542 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). VA has met its duty to notify for the claim decided herein. Service connection for loss of bladder control was granted in August 2009. The Veteran is now appealing the downstream issues of the initial ratings that were assigned. Therefore, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1131 (Fed. Cir. 2007), Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Moreover, it has not been argued that appropriate notice was not provided; and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009) (clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). Thus, adjudication of the claim at this time is warranted. 

The record establishes that the Veteran has been afforded a meaningful opportunity to participate in the adjudication of his claim. Thus, there is no prejudice to the Veteran in the Board's considering this issue on its merits. The Board finds the duty to notify provisions have been fulfilled, and any defective notice is nonprejudicial to the Veteran and is harmless. 

The Board finds that all relevant evidence has been obtained with regard to the Veteran's claim decided herein, and the duty to assist requirements have been satisfied. All available service treatment records (STRs) were obtained. VA treatment records and private records are associated with the file. The Board has reviewed the Veteran's statements/testimony and medical evidence of record and concludes that there is no outstanding evidence with respect to the Veteran's claim. 

The record include both private and VA reports which specifically addresss the severity of the Veteran's loss of bladder control. The Board finds that the VA and private medical reports are adequate for rating purposes. It appears that the reports are accurate and fully descriptive and include an assessment as to the Veteran's voiding habits, both daytime and nighttime. The Board finds that for these reasons, VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2016); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

Accordingly, the Board finds that VA's duties to notify and assist the Veteran have been met, so that no further notice or assistance to the Veteran is required to fulfill VA's duties. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001). 

Increased Ratings - In General

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2016). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7 (2016). 

It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2016). 

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. 
38 C.F.R. § 4.20 (2016). 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). However, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). 

Staged ratings may be appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See e.g. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Background and Analysis

The Veteran is currently rated pursuant to DC 7542 for neurogenic bladder. DC 7542 is rated as voiding dysfunction. 

For voiding dysfunction, a 20 percent rating is assigned when the wearing of absorbent materials is required and when the absorbent materials must be changed less than two times per day. Urinary incontinence or leakage requiring the wearing of absorbent materials that must be changed two to four times per day is assigned a 40 percent rating. Urinary incontinence or leakage requiring the use of an appliance of the wearing of absorbent materials that must be changed more than four times per day is assigned a 60 percent rating. 38 C.F.R. § 4.115a (2016). In this case, the Veteran is noted to require absorbent materials as of January 11, 2016. This fact is addressed in this decision below. 

The Veteran has symptoms of urinary frequency. Urinary frequency with a daytime voiding interval between two and three hours, or; awakening to void two times per night warrants a 10 percent evaluation. Urinary frequency with a daytime voiding interval between one and two hours, or; awakening to void three to four times per night warrants a 20 percent evaluation. Urinary frequency with a daytime voiding interval less than one hour, or; awakening to void five or more times per night warrants a 40 percent evaluation. 38 C.F.R. § 4.115a (2016). 

As previously noted, service connection was granted for loss of bladder control upon rating decision in August 2009, and a 20 percent rating was assigned. This 20 percent rating was assigned based on private records from 2008-2009 which reflect that the Veteran had urinary frequency issues. As noted in May 2008, the Veteran had complaints of frequency and a slow stream with nocturia times 3. When examined by VA in April 2009, the Veteran showed symptoms of urinary urgency and frequency with daytime interval of every 2 to 3 hours and nocturia of 2 times per night. There was no report of the necessity for absorbent materials. 

Based on these findings, it is the Board's conclusion that the currently assigned 20 percent rating for service-connected loss of bladder control is appropriate for the period prior to August 21, 2009. For this period in question, it is clear that the Veteran does not show urinary frequency with a daytime voiding interval less than one hour, or; awakening to void five or more times per night, which symptoms would warrant a 40 percent evaluation. 

That being said, a private treatment note dated on August 21, 2009, reflects the Veteran's complaints that his nighttime voiding had increased to 5 times per night. Moreover, his daytime voiding interval was increased to every hour or so. When rated as urinary frequency, a 40 percent rating is warranted from the date of August 21, 2009. A higher rating is not warranted as the 40 percent rating is the maximum allowed regarding urinary frequency, and voiding dysfunction regulations remain inapplicable as the Veteran is not shown to wear absorbent materials during this period. 

The Board finds that a rating of 40 percent, as currently assigned, is correct for the period from August 21, 2009, through January 10, 2016. 

As for the period from January 11, 2016, forward, the record includes submission of the Veteran's statement as of that date where he reports the need to change his Reebok brand underwear up to 5 times per day. He also submitted a receipt showing that he had purchased such underwear in mid-2015. Under the voiding dysfunction regulations, a 60 percent rating is warranted when loss of bladder control requires the use of an appliance or wearing of absorbent materials which must be change more than 4 times per day. This requirement is met as of the Veteran's statement on January 11, 2016, as reported above. This is the maximum rating under either the voiding dysfunction or urinary frequency regulations. No renal dysfunction which might result in an increased rating is indicated. 

It is the Board's conclusion that the currently assigned 60 percent rating is appropriate for loss of bladder control as of January 11, 2016. Clinical findings that might result in the consideration of other DCs are not indicated. Thus, a disability rating higher than 60 percent cannot be assigned for the service-connected disability from January 11, 2016. 

Extraschedular Considerations

There is no evidence of exceptional or unusual circumstances to warrant referring this claim for extraschedular consideration. 38 C.F.R. § 3.321(b)(1) (2016). The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the Veteran's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral to the Director of the Compensation Service for consideration of an extraschedular rating is required. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

As described above, the manifestations of the Veteran's voiding dysfunction and urinary incontinence are contemplated by the schedular criteria set forth in DC 7542. DC 7542 adequately contemplates the Veteran's symptoms of voiding dysfunction and urinary frequency, to include frequency and the necessity to wear absorbent materials. The criteria practicably represent the average impairment in earning capacity resulting from the Veteran's service-connected incontinence, such that he is adequately compensated for "considerable loss of working time ...proportionate to the severity of the several grades of disability." See 38 C.F.R. § 4.1 (2016). Further, no examiner has reported an exceptional disability picture with symptoms not represented in the rating schedule. In sum, there is no indication that the average industrial impairment from the disability would be in excess of that contemplated by the assigned rating. Accordingly, the Board has determined that referral of this case for extraschedular consideration is not in order. 

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3844196 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected symptoms experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

An inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) also has been considered. Here, however, an August 2008 rating decision granted the Veteran's separately-raised claim for TDIU, effective March 29, 2004. Because a TDIU has been in effect throughout the appeal period, Rice is not applicable. 


ORDER

Entitlement to an initial rating in excess of 20 percent for loss of bladder control for the period prior to August 21, 2009, in excess of 40 percent for the period from August 21, 2009, to January 10, 2016, and in excess of 60 percent from January 11, 2016, is denied. 


REMAND

With regard to the following issues - entitlement to a rating in excess of 40 percent DDD of the lumbar spine for the period prior to February 28, 2011, and in excess of 20 percent therefrom; entitlement to a rating in excess of 30 percent for DDD of the cervical spine for the period prior to January 19, 2017, and in excess of 20 percent therefrom; entitlement to an initial rating in excess of 30 percent for PN of the LUE, to include the shoulder, arm, hand, and fingers; entitlement to an initial rating in excess of 20 percent for PN of the LLE, to include the hip, buttocks, and foot, prior to January 19, 2017, and in excess of 40 percent from that date; and entitlement to SMC based on the need for regular aid and attendance of another person or at the housebound rate - the most recent SSOC was issued on March 7, 2017. 

However, after the SSOC was issued, the Veteran submitted private treatment records reflecting 2017 treatment for worsening low back pain with radiation to the lower extremities and neck pain with radiation to the upper extremities. A magnetic resonance imaging (MRI) of the cervical spine from April 2017 was submitted as well as new X-ray studies of the lumbar spine, also from April 2017. These documents, submitted without a waiver of RO consideration, are deemed relevant to the remanded issues regarding increased ratings. No subsequent SSOC has been issued. 38 U.S.C.A. § 7105 West 2014). Subsection e of 38 U.S.C.A. § 7105 (West 2014) provides, "If either at the time or after the AOJ receives a substantive appeal, the claimant or the claimant's representative, if any, submits evidence to either the AOJ or the Board of Veterans' Appeals for consideration in connection with the issue or issues with which disagreement had been expressed, such evidence shall be subject to initial review by the Board unless the claimant or claimant's representative, as the case may be, requests in writing that the agency of original jurisdiction initial review such evidence." This provision; however, only applies to substantive appeals (VA Form 9s) submitted after February 2, 2013. In this case, the Veteran's VA Form 9 was submitted prior to that date and therefore the Veteran is entitled to an initial review by the AOJ. See 28 C.F.R. §19.31(b)(1)(2016). Therefore, the Board finds that on remand, the AOJ must issue a SSOC after review of any evidence associated with the Veteran's electronic claims folder since the March 2017 SSOC. 

As resolution of the claims discussed above regarding increased ratings may have an impact on the appellant's claim for SMC, the issue is inextricably intertwined. Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that where a decision on one issue would have a "significant impact" upon another, and that impact in turn could render any appellate review meaningless and a waste of judicial resources, the two claims are inextricably intertwined). Thus, the Board finds that the appellant's claim for SMC should be held in abeyance, pending the development and readjudication of the increased rating claims. 

Accordingly, the case is REMANDED for the following action:

The RO should readjudicate the following claims: 
entitlement to a rating in excess of 40 percent DDD of the lumbar spine for the period prior to February 28, 2011, and in excess of 20 percent therefrom; entitlement to a rating in excess of 30 percent for DDD of the cervical spine for the period prior to January 19, 2017, and in excess of 20 percent therefrom; entitlement to an initial rating in excess of 30 percent for PN of the LUE, to include the shoulder, arm, hand, and fingers; entitlement to an initial rating in excess of 20 percent for PN of the LLE, to include the hip, buttocks, and foot, prior to January 19, 2017, and in excess of 40 percent from that date; and entitlement to SMC based on the need for regular aid and attendance of another person or at the housebound rate. Then issue a SSOC which takes into consideration the evidence associated with the VBMS and Virtual VA files (including private medical records from early 2017) and provide the Veteran and his representative the requisite period of time to respond. The case should then be returned to the Board for further appellate review, if otherwise in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs